```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SECURITIES AND EXCHANGE            :
COMMISSION,
                                   :       OPINION AND ORDER
            Plaintiff,
                                   :       17 Civ. 9552 (GWG)
   -v.-
                                   :
ZACHARY S. BERKEY,
                                   :
            Defendant.             :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Following the entry of a judgment on consent in favor of plaintiff Securities and Exchange Commission ("SEC") against defendant Zachary S. Berkey, the SEC now moves for disgorgement, prejudgment interest, and civil monetary penalties.[1] For the following reasons, the SEC's motion is granted as set forth below.

I. BACKGROUND

    A. Procedural History

The SEC filed a complaint on December 6, 2017, against Berkey and Daniel T. Fischer, alleging that while acting as registered representatives at Four Points Capital Partners LLC ("Four Points"), Berkey and Fischer violated Section 17(a) of the Securities Act of 1933, 15

---

[1] See Notice of Motion, filed Jan. 18, 2019 (Docket # 42); Memorandum of Law in Support of Plaintiff's Motion for Disgorgement, Prejudgment Interest and a Civil Money Penalty Against Defendant Zachary S. Berkey, filed Jan. 18, 2019 (Docket # 43) ("Pl. Mem."); Declaration of David Stoeling, filed Jan. 18, 2019 (Docket # 44) ("Stoeling Decl."); Affidavit of Defendant Zachary S. Berkey, filed Mar. 1, 2019 (Docket # 45) ("Berkey Aff."); Memorandum of Law in Opposition to Plaintiff's Motion for Disgorgement, Penalties and Other Relief, filed Mar. 1, 2019 (Docket # 46) ("Def. Mem."); Reply Memorandum of Law in Support of Plaintiff's Motion for Disgorgement, Prejudgment Interest, and a Civil Money Penalty Against Defendant Zachary S. Berkey, filed Mar. 29, 2019 (Docket # 47) ("Pl. Reply").

U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5.  Complaint, filed Dec. 6, 2017 (Docket # 1) ("Compl."), ¶¶ 1-4. Following discovery, on September 27, 2018, Berkey and the SEC filed a proposed consent judgment resolving Berkey's liability.  See Judgment as to Defendant Zachary S. Berkey, filed Sept. 27, 2018 (Docket # 31).  The court adopted and entered the proposed judgment on October 10, 2018.  See Judgment as to Defendant Zachary S. Berkey, filed Oct. 10, 2018 (Docket # 35) ("Consent Judgment").  The Consent Judgment permanently enjoined Berkey from engaging in future violations of the antifraud provisions of the federal securities laws, and ordered that Berkey "pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty," with the amount of disgorgement and civil penalty to be determined by the court upon the SEC's motion.  Id. at 1, 3.

On November 4, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have the remainder of the case decided by a United States Magistrate Judge.  Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, filed Nov. 5, 2018 (Docket # 39).  This motion followed.

B.  Factual Background

Per the Consent Judgment, "the allegations of the Complaint shall be accepted as and deemed true by the Court," and Berkey is "precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint."  Consent Judgment at 3.

As alleged in the Complaint, from 2013 through 2014, Berkey was a registered representative of a broker-dealer and was required to have a reasonable basis that his recommendations for trades were suitable for at least some customers.  Compl. ¶¶ 1, 12.  Despite this duty, Berkey recommended a high cost "in-and-out" trading strategy for six customers

2

without having a reasonable basis for the belief that this strategy was suitable for any customers. Compl. ¶¶ 12-24. Berkey also had a duty to make customer-specific determinations — that is, to determine that his recommendations were suitable for customers in light of those customers' financial needs, investment objectives, risk tolerances, and circumstances. Id. ¶ 25. Despite this duty, Berkey recommended a high-cost, in-and-out trading strategy to three customers, which he knew was not suitable for these customers because they all had conservative to moderate investment objectives and risk tolerances. Id. ¶¶ 25-28. Berkey also concealed material information from his customers and made material misrepresentations to them. Id. ¶ 29. In particular, in advising customers to engage in a high-cost, in-and-out trading strategy, Berkey implicitly represented that he had a reasonable basis for recommending such a strategy. Id. ¶ 30. In addition, Berkey failed to tell his customers that the transaction costs associated with the recommended strategy would almost certainly exceed any potential gains. Id. ¶¶ 31-32. Berkey also "churned" the accounts of three customers by "engaging in excessive trading in disregard of [the] customers' trading objectives and risk tolerance for the purpose of generating commissions." Id. ¶ 33. These customers had low or moderate risk tolerances, were unsophisticated, and lacked the financial acumen necessary to independently evaluate Berkey's recommendations. Id. ¶¶ 35, 37. Berkey exercised de facto control over these customer accounts, and made all investment decisions. Id. ¶ 35. As a result of these violations, Berkey received approximately $106,000 in commissions. Id. ¶ 3. He customers experienced losses of $421,479. Id., Exhibit A. Because of the unnecessary costs Berkey imposed on his customers, his accounts would have had to have increased in value an average of 58.19% yearly before the customer would have made any profit. Id. ¶ 22.

II. DISCUSSION

The SEC now seeks the following types of relief against Berkey: 1) disgorgement; 2) prejudgment interest; and 3) civil monetary penalties.  Berkey makes two arguments in opposition: 1) that this Court should decline to order disgorgement in light of the Supreme Court's opinion in Kokesh v. SEC, 137 S. Ct. 1635 (2017); and 2) that Berkey's financial situation is such that he will be unable to pay a substantial penalty and that the Court should account for this fact in determining the amount of civil penalties to be imposed.

We address each of the SEC's requests for relief in turn.

A. Disgorgement

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1474 (2d Cir. 1996) (internal citations omitted); accord United States Sec. & Exch. Comm'n v. Bronson, 756 F. App'x 38, 40 (2d Cir. 2018) (amended summary order); Sec. & Exch. Comm'n v. Frohling, 851 F.3d 132, 138-39 (2d Cir. 2016); S.E.C. v. Tourre, 4 F. Supp. 3d 579, 588 (S.D.N.Y. 2014); Sec. & Exch. Comm'n v. Hasho, 784 F. Supp. 1059, 1111 (S.D.N.Y. 1992).  "'The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws.'" Frohling, 851 F.3d at 139 (quoting First Jersey, 101 F.3d at 1474).

The Consent Judgment in this case specifically provides that "Defendant shall pay disgorgement of ill-gotten gains." Consent Judgment at 3.  The SEC seeks disgorgement of $106,000, the amount that Berkey earned in commissions through his illegal conduct.  Pl. Mem. at 15 (citing Compl. ¶ 3).  Berkey has not challenged this amount.  He argues only that

disgorgement should not be ordered in light of the Supreme Court's decision in Kokesh.  See Def. Mem. at 1-3.

Putting aside the fact that Berkey already agreed to disgorgement (and did so after Kokesh was decided), his argument has no merit.  In Kokesh v. S.E.C., 137 S. Ct. 1635 (2017), the Supreme Court considered whether a statute requiring that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture" be brought within five years, see 28 U.S.C. § 2462, applied to an SEC enforcement suit seeking disgorgement.  Kokesh concluded that disgorgement amounted to a "penalty" within the meaning of the statute and thus that a suit seeking disgorgement should have been brought within the five year limitations period.  137 S. Ct. at 1639.

Berkey provides no argument as to why Kokesh should prevent the Court from ordering disgorgement other than to say that "based on Kokesh, disgorgement should not be ordered."  Pl. Mem. at 3.  But Kokesh itself explicitly stated that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context." 137 S. Ct. at 1642 n.3.  Moreover, since Kokesh, the Second Circuit has upheld disgorgement awards, see Bronson, 756 F. App'x at 40; U.S. Sec. & Exch. Comm'n v. Metter, 706 F. App'x 699, 702 (2d Cir. 2017), and numerous district courts in this circuit have imposed disgorgement as a penalty, see, e.g., SEC v. Ahmed, 343 F. Supp. 3d 16, 26-27 (D. Conn. 2018) (noting that "nothing in Kokesh disturbed Second Circuit precedent that disgorgement is a proper equitable remedy" and collecting cases upholding disgorgement post-Kokesh); Sec. & Exch. Comm'n v. Cope, 2018 WL 3628899, at *4-5, *10 (S.D.N.Y. July 30, 2018).

Accordingly, the Court orders that Berkey disgorge $106,000, given that this was the

amount in commissions that Berkey earned through his illegal conduct. See Hasho, 784 F. Supp. at 1112 ("Due to the pervasive nature of the fraud in this case, the proper measure of disgorgement is the amount of commissions earned by each defendant in each of the customer witnesses' accounts.").

    B. Prejudgment Interest

In securities cases, "[p]rejudgment interest may be awarded on sums ordered disgorged in order to fully compensate the wronged party for actual damages suffered." Frohling, 851 F.3d at 139. Berkey agreed in the Consent Judgment that the SEC was entitled to an award of prejudgment interest. Consent Judgment at 3. The Consent Judgment provides that "Prejudgment interest shall be calculated from December 31, 2014, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 662l(a)(2)." Id. Accordingly, the SEC shall be awarded prejudgment interest in accordance with the Consent Judgment.

    C. Civil Monetary Penalties

"Civil monetary penalties are authorized by the Securities Act and the Exchange Act for both deterrent and punitive purposes." Frohling, 851 F.3d at 139 (citing SEC v. Razmilovic, 738 F.3d 14, 38-39 (2d Cir. 2013)). If a violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons," a court may impose what are termed "Tier III" penalties, or fines of up to the higher of (1) $160,000 for each violation by a natural person, or (2) the defendant's "gross amount of pecuniary gain." 15 U.S.C. 78u(d)(3)(B)(iii) (as adjusted by 17 C.F.R. § 201.1001(a)). "Beyond setting maximum penalties, the statutes leave the actual amount of the penalty . . . up to the discretion of the

district court." S.E.C. v. Amerindo Inv. Advisors Inc., 2014 WL 2112032, at *12 (S.D.N.Y. May 6, 2014), aff'd, 639 F. App'x 752 (2d Cir. 2016) (citing Razmilovic, 738 F.3d at 38) (some internal citations omitted).

> In exercising this discretion, courts weigh (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

Id. (citing Tourre, 2014 WL 969442, at *11); accord S.E.C. v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007); see also Sec. & Exch. Comm'n v. Rajaratnam, 918 F.3d 36, 45 (2d Cir. 2019) (noting that "[w]hile the Haligiannis factors have been considered in several cases . . . they have not been deemed an exhaustive list by this Court and are not to be taken as talismanic") (internal citations omitted).

Berkey does not contest that his actions, as alleged in the complaint, warrant Tier III penalties or that the first four factors favor a significant fine. Indeed, the allegations in the complaint — which the Consent Judgment requires that we deem to be true, see Consent Judgment at 3 — show that Berkey knowingly and recurrently engaged in deceitful activities that resulted in substantial losses to several customers, see Compl. ¶¶ 1-3, 12-40. Accordingly, a significant penalty is necessary to punish Berkey and to deter Berkey and others from engaging in similar actions in the future. Many securities enforcement cases have awarded a penalty equal to the amount gained by the defendant. See, e.g., Sec. & Exch. Comm'n v. Spark Trading Grp., LLC, 2018 WL 6727349, at *3 (E.D.N.Y. Dec. 21, 2018); Sec. & Exch. Comm'n v. Aly, 2018 WL 4853031, at *5 (S.D.N.Y. Oct. 5, 2018). As one case put it, a fine based on the amount the defendant illegally obtained may "reflect[] the egregiousness of [his] conduct and the losses he

7

caused." Sec. & Exch. Comm'n v. Penn, 2018 WL 4378444, at *6 (S.D.N.Y. Sept. 14, 2018).

Such reasoning would point to a fine of $106,000. Berkey, however, has proferred documents showing that he has a net worth of negative $76,335.33, see United States Security and Exchange Commission Statement of Financial Condition (annexed as Ex. 7 to Berkey Aff.) ("Statement of Financial Condition"), at 2, and a negative monthly cash flow, with two children to support, see id. at 5-6, 8; Berkey Aff. ¶ 12. He works on a commission basis in sales, Berkey Aff. ¶ 11, and shows an adjusted gross income of $70,303 on his 2017 tax return, see 2017 Income Tax Return (annexed as Ex. 1 to Berkey Aff.), and wages of $93,238.79 on his 2018 W-2, see 2018 W-2 and Earnings Summary (annexed as Ex. 2 to Berkey Aff.). His monthly expenses are not extravagant and include a significant monthly child support payment. See Statement of Financial Condition at 6. Berkey obviously has limited ability to pay a fine. On the other hand, he has a long future potential earning career given his age (44). After considering Berkey's financial condition, as well as all the other factors that show egregious conduct on his part (including his settling prior cases alleging churning for a total of $35,500, see Stoeling Decl., Exhibit 1), we conclude that a fine in the amount of $71,000 is appropriate.

III. CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket # 42) is granted. The Clerk is directed to enter judgment in favor of plaintiff and against defendant Zachary S. Berkey in the amount of $177,000 plus an amount representing prejudgment interest on $106,000 from December 31, 2014, until the date judgment is entered, to be calculated by the Clerk at the rate set forth in 26 U.S.C. § 6621(a)(2). If any part of the judgment remains unpaid following entry of judgment, plaintiff will be entitled to post-judgment interest as set forth in 28 U.S.C. § 1961.

SO ORDERED.

Dated: April 18, 2019
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge